OPINION OF THE COURT
David B. Saxe, J.
The issue that I am asked to resolve is whether General Business Law § 352-eeee (2) (c) (ii) prevents the landlord, owner of a condominium unit, from starting a holdover proceeding based upon the failure of the nonpurchasing occupant to maintain the premises as a primary residence.
The thrust of General Business Law § 352-eeee (2) (c) (ii) is to protect a nonpurchasing tenant from an early termination of his tenancy or the eviction of that tenant based solely upon a decision not to purchase the apartment. That section provides: “(ii) No eviction proceedings will be commenced at any time against non-purchasing tenants for failure to purchase or any other reason applicable to expiration of tenancy; provided that *667 such proceedings may be commenced for non-payment of rent, illegal use or occupancy of the premises, refusal of reasonable access to the owner or a similar breach by the non-purchasing tenant of his obligations to the owner of the dwelling unit or the shares allocated thereto; and provided further that an owner of a unit or of the shares allocated thereto may not commence an action to recover possession of a dwelling unit from a non-purchasing tenant on the grounds that he seeks the dwelling unit for the use and occupancy of himself or his family” (emphasis added).
With respect to rent-stabilized tenancies, the Omnibus Housing Act (L 1983, ch 403) specifically exempted housing accommodations not occupied by the tenant as a primary residence from the coverage of rent stabilization (see, L 1983, ch 403, §§ 41, 55, which amended the Rent Stabilization Law [Administrative Code of City of New York § YY51-1.0 et seq.] and the Emergency Tenant Protection Act of 1974 [ETPA; L 1974, ch 576, § 4]) and provided that a court of competent jurisdiction was the appropriate forum to hear a landlord’s claim that he was entitled to recover possession of the premises because the tenant was not occupying it as a primary residence. Thus, as against a rent-stabilized tenant, a holdover summary proceeding may be maintained at the expiration of the tenant’s lease, after the requisite notice is given, premised upon the tenant’s lack of primary residence.
The question raised in this proceeding is whether the landlord has a correlative right to evict a nonpurchasing tenant on account of his nonprimary residence status in a building that is undergoing or has undergone a noneviction conversion to condominium or cooperative ownership.
The nonpurchasing tenant here continues to be subject to government regulation (i.e., Rent Stabilization Law) having been protected by the Rent Stabilization Law prior to the building’s conversion to condominium ownership by virtue of General Business Law § 352-eeee (2) (c) (iii). That section provides: “(iii) Non-purchasing tenants who reside in dwelling units subject to government regulation as to rentals and continued occupancy prior to the conversion of the building or group of buildings or development to cooperative or condominium ownership shall continue to be subject thereto.”
As to tenants not subject to government regulation, the following subsection, General Business Law § 352-eeee (2) (c) (iv), provides: “(iv) The rentals of non-purchasing tenants who reside in dwelling units not subject to government regulation as to *668 rentals and continued occupancy and non-purchasing tenants who reside in dwelling units with respect to which government regulation as to rentals and continued occupancy is eliminated or becomes inapplicable after the plan has been accepted for filing by the attorney general shall not be subject to unconscionable increases beyond ordinary rentals for comparable apartments during the period of their occupancy”.
General Business Law § 352-eeee (2) (c) (ii) lists certain permissible and impermissible grounds for eviction with respect to nonpurchasing tenants. The tenant’s sole claim is that the plain meaning of General Business Law § 352-eeee (2) (c) (ii) precludes eviction proceedings against any tenant except for specified reasons that are set out as follows: (1) nonpayment of rent; (2) illegal use or occupancy of the premises; or (3) refusal of reasonable access to the owner or a similar breach by the nonpurchasing tenant of his obligations to the owner of the dwelling unit of the shares allocated thereto.
Since nonprimary residence is not specifically listed in the statute as one of the grounds for eviction of a tenant in the context of a noneviction cooperative or condominium plan, the tenant claims that this action is not proper. Construed in this fashion, the General Business Law would provide greater protections to a tenant in a noneviction cooperative or condominium than a rent-stabilized tenant in a purely rental building.
This indeed is the position taken by one court. (See, 58 W. 58th St. Tenant Assn. v 58 W. 58th St. Assoc., 126 Misc 2d 500, 505 [Sup Ct, NY County, Special Term, Part I 1984]) which noted that this interpretation was consistent with the position taken by the New York State Attorney-General concerning the rights of nonpurchasing, adjudicated nonprimary residents.
I respectfully decline to follow that position for the following reasons:
The tenant’s argument basically attempts to equate the proscription against eviction contained in General Business Law § 352-eeee (2) (c) (ii) (i.e., early termination of lease or tenancy, except upon specified grounds) with the issue of the status of the subject apartment as being subject to or exempt from government regulation (i.e., rent stabilization laws). (General Business Law § 352-eeee [2] [c] [iii] or [iv].)
It is the status of an apartment that is subject to the Rent Stabilization Law, from which a tenant derives the right to continued occupancy. Where that status ends, as for example, where a court determines that the tenant no longer occupies the *669 apartment as his primary residence, there ceases to be a right to continued occupancy.
Thus, where a rent-stabilized tenant is found by a court of competent jurisdiction, at the end of his lease, not to utilize his apartment as a primary residence, certain consequences occur: his apartment is no longer subject to rent stabilization and the tenant no longer has a continuing right to receive renewal leases.
A recovery of an apartment where the tenant fails to maintain it as a primary residence is not an eviction for “any other reason applicable to expiration of tenancy” (General Business Law § 352-eeee [2] [c] [ii]), but instead is a recovery which flows from the exempt status of the apartment by virtue of a court’s determination that the tenant is not a primary resident. Thus, where the nonpurchasing tenant fails to occupy the premises as his primary residence, his tenancy is no longer “subject to govefnment regulation as to rentals and continued occupancy” (General Business Law § 352-eeee [2] [c] [iii]) because such government regulation (rent stabilization) becomes inapplicable upon an adjudication that the tenant is not occupying the apartment as his primary residence (L 1983, ch 403, § 41). Thus, General Business Law § 352-eeee (2) (c) (iii) gives the nonpurchasing tenant no more or no less than the underlying protections afforded him by the Rent Stabilization Law.
General Business Law § 352-eeee (2) (c) (iv) addresses the status of nonpurchasing tenants who reside in dwelling units not subject to government regulations as to rentals and continued occupancy either at the inception of the conversion process or after the plan has been accepted for filing by the Attorney-General. All the section mandates is that if those nonpurchasing tenants not subject to government regulation (which would include adjudicated nonprimary residents) are not removed from possession, they may not during their period of occupancy be subject to unconscionable rental increases; it does not alter the right of the owner to recover possession of those exempt premises.
Returning to the prohibition contained in General Business Law § 352-eeee (2) (c) (ii) against evictions of “non-purchasing tenants for failure to purchase or any other reason applicable to expiration of tenancy”, except on certain specifically enumerated grounds, I note that each of the grounds listed are considered breaches of a lease and serve as a basis under the rent stabilization laws for terminating a lease and evicting a tenant. Nonprimary residence, however, differs from these other *670 grounds because it is not considered a breach of a leasehold interest and it is not a basis for the termination of a lease under the Rent Stabilization Law. My analysis of the statute ineluctably leads me to conclude that the use of the words “expiration of the tenancy” was not intended to preclude a landlord from recovering premises from a nonpurchasing, nonprimary resident tenant who can no longer claim entitlement to coverage, and hence, continued occupancy, under the Rent Stabilization Law or General Business Law § 352-eeee (2) (c) (iii).
This interpretation is consistent with the intent of the Legislature. The enactments relating to exclusion of rent stabilization coverage to nonprimary resident tenants as well as those relating to protecting nonpurchasing tenants under noneviction plans from evictions under General Business Law § 352-eeee (2) (c), both seek to protect tenants who utilize their apartments as their homes from evictions. (See generally, Park S. Assoc. v Mason, 123 Misc 2d 750 [Civ Ct, NY County 1984], affd 126 Misc 2d 945 [App Term, 1st Dept], lv denied NYLJ, Jan. 15,1985, p 6, col 2 [App Term, 1st Dept], lv denied [1st Dept 1985]; see also, Legislative Findings, McKinney’s Cons Laws of NY, Book 19, General Business Law § 352-eeee, p 126.)
A tenant should not have a perpetual right to continued occupancy where it can be demonstrated that he does not occupy the apartment as his primary residence. Indeed, there is no greater reason to afford additional rights to continued occupancy to a nonprimary resident who happens to occupy a cooperative apartment pursuant to a noneviction plan than there is to afford that protection to an ordinary rental tenant who has failed to occupy the apartment as a primary resident.
To say that the Legislature now sought to protect the tenancy of nonprimary residents in only the cooperative and condominium setting, where there is no such right in the purely rent setting would lead to an absurd and objectionable result (McKinney’s Cons Laws of NY, Book 1, Statutes § 145), which is to be avoided.
Therefore, I find that an eviction action based on nonprimary residence is one based on the exempt status of the apartment from government regulation not an eviction “applicable to expiration of tenancy”. Thus, General Business Law § 352-eeee (2) (c) does not preclude an action to evict a nonpurchasing tenant based on lack of primary residence.
Accordingly, a valid cause of action is stated and the cross motion to dismiss is denied. The petitioner’s motion for discov *671 cry is granted and the interrogatories are deemed served as of the date of this order.